May it please the court. My name is Daniel Willie. I'm with Reed Smith in the Pittsburgh office. I'm here on behalf of the Appellant Retirement Plan. I'd like to reserve three minutes for rebuttal. The decision in this case must be reversed because the district court, in holding that the plan committee's interpretation of the plan was arbitrary and capricious, itself construed the terms of the plan in a very inconsistent manner. In such a way that the terms of the plan really cannot be administered using the normal understanding of ERISA and normal language. And that's the hallmark of an arbitrary and capricious decision. The court substituted its own opinion for that of the plan and that is an abuse of discretion. Counsel, I have a question about that. Doesn't your interpretation of accrual of a benefit, accrual benefit, make it impossible for anyone to qualify as a participant without having worked after May 1st, 1978? It seems to me, as our video briefs, your interpretation of the phrase accrual benefit here under is confusing, is circular, is contrary to the plain language of those terms, and in conflict with the other provisions of the plan. This is my issue with this case. Could you respond? Certainly. It is not the committee's decision that was circular. It was actually the court's. Let's take a look at what this plan actually does and where the accrual benefit idea comes from. I think I'll give you a chance to do that, but just to elaborate on Judge Nelson's question for a moment, I think what she's saying, because this is bothering me as well, that even if, and the facts of this case are a little odd because Mr. Weaver had not quite qualified for the plan that he was originally working under. But if he had, or if he had worked under one of the plans that ended before May 1, 1978, and actually had accrued enough time under those plans, under your interpretation, he still couldn't qualify. That's correct. And that's exactly what ERISA tried to, let's get specific, suppose he'd worked for 30 years instead of 13. He wouldn't qualify under any plan, under your interpretation. Is that correct? That's correct, unless he met the age of service. That makes any sense whatsoever. That is exactly what ERISA was designed to correct. But it was not made retroactive. You know, even once ERISA was passed, it was permissible to have a 10-year vesting schedule. And if a person worked, new employee, for 9 years and 11 months, and walked out the door and didn't work for the employer again, he lost a benefit. It used to be worse. And let's keep in mind that while ERISA was designed... Pretty bad by itself. I don't know how it could be worse. My hypothetical man works for 30 years because he doesn't retire as an employee during the term of the plan, but instead goes on this leave status because he's working for the union. He doesn't qualify under the plan that exists then, although by its terms he would qualify. And you say he doesn't qualify later because he didn't work for a long enough period of time under that plan.  That is exactly the way it was. You're telling us that's exactly the way your position is today, and I'm telling you the district court didn't read the plan that way, and I'm going to have some difficulty reading the plan that way myself if you think that's a logical conclusion from the terms of this plan. It doesn't seem very logical to me. Logic has nothing to do with it. I beg your pardon. I think logic has something to do with it because you're supposed to make a fair, reasonable reading of these plans. If you take a look at these plans for freestanding, and there's two pages to take a look at in the excerpt. Please ask one other question before we get there. If the payments are required to be made, where does the money come from? Today they come from the trust. Is the trust already established? The trust is required by RISA to be established and funded. The trust was the money that was paid in for this person in the 1960s. Was that part, did that go into this current trust? Where did the money come from? It comes from the employer that is based upon the work of the employee. Did the employer pay money into this trust in connection with the work done by this employee? I assume he did. And the trust is the plan that the decision makers here administer? One more time. The trust, the source of the money, I take it that's the plan that's being administered by the decision makers here. That's the plan before us? Yes, with one exception, though. Prior to ERISA, employers could dip into that trust for their own purposes. That was the issue with the Studebaker plant, and that's one of the reasons why ERISA was set up. Because even though it was in a trust before ERISA, that didn't mean the money was there for the employees. Well, what you're saying is that they could have decided in the later plans not to credit the earlier time. But they did credit the earlier time. Only a participant could have this part-time credit. Now, where were you getting this notion that a participant has to be somebody who worked after May 1st? First of all, you've now switched gears. Because, as I understand it, the internal opinion that you're defending didn't use this May 1, 1978 data. It used the 1981 data. Its position was that you had to work after this plan went into effect, and your position now is you had to work after May 1, 1978. So that's changed. I think the 81 plan refers to 78. I'm sorry, what? The 1981 plan refers to 1978. But the original position was that you had to work after 1981. Well, perhaps. 78 is the date. So you're not really defending what was done originally anyway? You're changing the interpretation. There was a typo from 81 to 78. It was a different view. It seemed to me that the whole theory at that point was a different theory than the theory you're putting forward now. Well, let's go to your current theory. The theory is no different. In fact, the 75 plan, the 78 plan, and the 81 plan are all identical. But the 81 plan refers to hours after May 1. But where does it say that you have to have worked during that period in order to have a benefit? Where does it say that? I would love to get to that. Good. Get to it. I was thinking of how best to explain this. If a pension plan does only two things,  if you take a look at Section 2 of the 1981 plan, you'll find that it says that a normal retirement is available to someone who is 65. The second paragraph says that the accrued benefit is $18.50 times your years of credited service. That is your accrued benefit. Where is that? I'm sorry. I see where it is. Go ahead. What? An accrued benefit. I'm sorry. What page are you referring to? There are multiple numbers on it. It looks like I've got a number 260. Yes. Your number. The principle is the same. I got it. I'm sorry, Your Honor. Judge Nelson has a question. She wanted to find the right one. That's why we answered it. Okay. Proceed. Yes. You have different multipliers. They're multiplied by years of credited service. So credited service is the key figure here that you need for your benefit formula. Your accrued benefit is simply a dollar calculation. If you go to Section 10, you find that an employee can accrue credited service through work. That's in paragraphs, Section 10, B and C, on page ER-267. First of all, you're reading an accrued benefit, not to be a benefit. I would understand an accrued benefit to mean one where you have met the terms of the benefit. And you're saying that it's accruing credit towards the benefit rather than actually meeting the terms of the benefit. No. Actually, once you have 100 hours, you have one-twelfth of a year times $18. And you're not tied to a benefit. You haven't accrued a benefit. You've accrued a benefit. You've accrued a credit towards a benefit, but you haven't accrued a benefit. No. RISA defines an accrued benefit as the amount that would be payable at normal retirement age in a single life annuity. So an accrued benefit is simply a dollar calculation. It's not a benefit. It's payable because it's not vested. Until you vest in your accrued benefit, that accrued benefit is not payable in one of the forms. Where is this RISA definition? The RISA definition is around, if you're in the code, I think it's 1002, around paragraph 23. I think we include it in our principle brief. The term accrued benefit. In the case of a defined individual, an accrued benefit is the form of an individual expressed. Well, it's defined completely surgurally. It doesn't say. An accrued benefit is simply a number. If one works enough to vest, then that accrued benefit cannot be taken away. And then if you meet the benefit eligibility requirements, for example, age and service, then you can take it as a normal retirement, an early retirement. If you become disabled and you've got ten years, you get a disability retirement benefit. If you do not qualify for any of those and you've got ten years, then you've got a vested deferred benefit that you can get at 65. But there are three pieces here. Accrued benefit is simply a calculation of a multiplier times the years of accredited service. Vesting is how you earn the right, the non-forfeitable right to that benefit. And then you've got your benefit form. And you need all three legs in order to get that pension. Okay. So now explain to me why he had to have worked during the relevant time frame in order to accrue a benefit rather than using his already accrued credits, which this plan now says accrues him a benefit. Well, because if the this is an hours of service plan. Okay. Being an employee means nothing. You have to become a participant. Now, ERISA said, for example, that you can require an employee to work for 1,000 hours before he becomes a participant. This plan is not that severe. It's more generous. If you take a look at the credited service section in 267 paragraph. But the very first paragraph is credited services of a participant up to May 1, 1978, shall be as credited service as of such date computed in accordance with the provisions of his former plan. Exactly. So he has credited service as of May 1, 1978. No. Why? Because of the word participant. If you scour this plan carefully, as I have, you will see that capital P participant and capital E employee are very used in strategic and important ways. In that section A, only a participant can have credited service prior to 78 credited. If you go to the next section, an employee can earn credited service through work in 100-hour increments. If you go to the next section, if you have overtime, the employee can accrue credited service through hours paid. But when you go to the section on any of the sections on the following page, on 268, you see that it's only a participant who can earn eligibility service. If you go to the pension requirements, only a participant can retire. There is a two-step situation here that is virtually universal. I still don't understand where you're getting the notion that in order to be a participant, you have to accrue the benefit by working after May 1, 1978, rather than accruing it by virtue of this first paragraph that gives you your former credits. Because the court there is being circular. If you look at section A. I think. That's what I'm trying to break. Section A there says that a participant can have his prior time counted. It doesn't say that an employee can. Okay. So here we get the notion that to be a participant, you have to have worked. I still don't see it. Where is it? You couple section 2, the description of the section 2, where all the benefits are described. All of the benefits describe a benefit formula that is based upon a dollar multiplier times years of credit service. That's the benefit formula. That's the magic language. That doesn't matter because we know that under some circumstances, your credit service is past time. So that doesn't help. So what else is there? Now, only after you're a participant. I know, but that doesn't tell me who is a participant. So now I want to know, where are you getting the notion that to be a participant, you have to work after May 1, 1978? Where is that? It's the entire plan. As I said, the plan only does two things. It describes how you accrue a benefit and tells you how you're going to get it. And it's not that there has to be a single sentence that's missing. There's nothing missing in this plan. If you're an employee, as Weaver was, and you work, you get 100 hours, now you have a number to put into the accrued benefit formula, 1 twelfth of a year times the multiplier. At that point, you have an accrued benefit. Now, that doesn't mean you have a right to it. You'll never have a right to it unless you also have the eligibility service. But here's the magic, and actually it's just contract. Once you've earned 100 hours, you have an accrued benefit. You're now a participant a lot sooner than you would be under ERISA, which requires that you can permit 1,000 hours a year before you're a participant. Here, it's merely 100 hours. But once you're a participant, your prior time counts. It all gets brought in. ERISA was not made retroactive, and this plan follows that line. You know, there's always been in the Riverside plan a distinction between an employee and someone in the employee. You know, there hasn't been. That wasn't introduced in 1965. That wasn't there. It wasn't there in 1971 when the length of service was reduced to 10 years. It was all employee then. The word participant came in later. And frankly, it sounds to me like it's being used to specifically screw some people out of benefits. I have real trouble understanding how we're supposed to derive from the plan as a whole a definition that carefully cuts out people from receiving benefits. In my hypothetical, somebody who may have worked for as long as 30 years, oh, sorry, you get nothing. And you can tell me the law doesn't have to require logic, but I can tell you that logic ought to be in here someplace. I'm having real trouble understanding your logic. This is consistent. This is logical. And consistent doesn't say somebody's not getting screwed, now does it? As I said, pre-ERISA, it was another world. But I can talk about that prior world if you'd like. There was two pages I was going to direct you to early when you first raised that point. One was 242, where the president of the union acknowledges that these are freestanding pension agreements that don't survive. And if you go as well to page 209, you'll find something that I think could be of interest. It says, when the 64 pension agreement expired, there was a one-year gap before another pension agreement was approved and negotiated by the union and the company. But nonetheless, your position is that if he had worked 100 hours between 1978 and now, he would get all that back time. Yes. Yes. And that was something that he didn't have a right to before ERISA. The plan gives him something here, but he didn't work for it. Right. Well, it gives him past credit. And the problem so the big bad world of pre-ERISA is not really the world of this plan. So the question is, where do we find this particular requirement that he work 100 hours after May 1, 1978? It's hard to find in the plan. Because you're saying otherwise he gets it. You're agreeing with everything else. You're saying that if he works, if he had done that, then his credited service would have become eligible service and the 10-year vesting would have kicked in and he would be home free. That's right. Where is that in this plan? Accrue a benefit is a phrase. And if you want to know what it means, you have to take a look at the plan. Okay. Where? Where's the definition? If you look at the plan, it says what is and you accrue. The section that you're relying doesn't use that language, does it? It doesn't have to use that language. It simply says that you have to accrue a benefit. You have to have something in the bank. Something in the bank. What I'm saying is that section about the 1850 multiplied by years of credited service does not use the term accruing a benefit, right? No, but that is if you look at it. It doesn't use the term. That's correct. But it doesn't need to. The other section that you're relying on, which is the credited service provision, also doesn't use the language accruing benefit, right? That's right. But this plan is not in a vacuum. ERISA defines what an accrued benefit is, and this plan uses that. Does ERISA define it to mean that you have to work for the hours in order to get credit for them? Actually, there are two ways that ERISA handles that issue. One is if it's an elapsed time plan, you don't need to work. You just need to be employed. But this is an hours of service plan. That's the question, not the answer, right? Pardon? That's the question, not the answer. Which is it? Oh, this is an hours plan because you have to work to get a pension. Not in your definition. You agree that if he had worked 100 hours, he'd get all the past time. So it's not an hours work plan. No, it's still an hours plan because even the past pension is still based on his hours of work at Riverside before 65. Everything here turns on hours. I'm looking at the definition of accrued benefit in ERISA. It says nothing about how that is figured or whether you work during the period that it was accruing. It doesn't say that. That was left up to the Treasury Department who came up with the initial regs, and they said that there are two ways that you can accrue that benefit. One is an elapsed time plan, and the other is an hours of service plan. Okay. But it doesn't say anything about working. I still don't see where that either says that you need to work during a certain time period in order for it to count. ERISA was not made retroactive. So the plan says if you're in the ERISA plan, then ERISA applies, but it doesn't go backwards and count time for people who quit years before. It does count time. He didn't quit years before. That's why he's not eligible under an earlier plan, because he wasn't deemed to be retired. He was still on employment status with the company. He wasn't working for the company. He was working for the union, but he hadn't quit. He didn't retire. That didn't happen until sometime during the time period. It was in 1980. I've lost track of the years. In 1986, when he terminated his service or whatever fashion, stopped working for the union, sought to return to work for the company and couldn't at that point because the agreement with the union had changed and he didn't have guaranteed reemployment at that point. But he hadn't stopped working or didn't get up to status as an employee in 1965. Employment is defined differently for the pension agreements and the basic labor agreements. Weaver admits that it was not until 1975 that retention and seniority made you a, quote, unquote, employee under the plan. In the 1964 plan, only if you take a look at all of the benefits, you take a look at the normal retirement, early retirement, what have you, while the 81 plan says you have to be a participant to get those, the 1964 pension agreement says you have to be an employee in the employee and you have to be in the employee and terminate during the term agreement in order to get that benefit. That was the rough life that existed. But an employee for purposes of the pension plan is different than an employee for purposes of basic labor agreement. And that distinction, Weaver has always tried to muddle. All right. We have given you a great deal of extra time. Your argument has been useful. We'll give you a minute or so in rebuttal. Thank you very much. Thank you. May it please the Court. I'm Michael Urban, Care Urban Clifford and Hodge. I'm here on behalf of Mr. Kent Weaver, a 75-year-old resident of Nevada who's now been waiting 10 years for this small pension benefit that he applied for back in 1999. I believe your questions, Justices, this morning confirm the decision that was made by the district court judge here and really determine what should be done here on appeal. There is no. Is Mr. Weaver a participant under the 1981 plan?  First, Justice Berzon's question. There are judges. No justice here. Oh, I apologize. Judge Berzon's question that there is nothing in this plan that says you have to work again to get a benefit, to be a participant. There's just nothing there. Well, I've struggled with that, and let me try to strain out what I think might be the basis for that argument, which is the definition of the term participant on page 259 of the record. It says participant means an individual who has satisfied the requirements for participation in this plan and has accrued a benefit here under. And I take it the argument is you don't accrue a benefit under this particular plan unless you somehow worked under this particular plan. I understand that's the argument, but then if you compare that with the actual records of Riverside, which they actually showed him as having, if they rehired him, 34 years and six months of seniority and credited service. That was when they terminated him in October of 1986. I take it it's not your argument that he has 34 years of service for pension purposes. Absolutely not. In fact, that is the Van Boxel argument that's been cited by the appellants here, that he is trying to somehow use that kind of argument. The opposite is true. He has 13 years and eight months of actual work service for this company. The document to look at is the document at the time that he is terminated, the 1981 plan, with a 10-year vesting requirement. That's exactly what we are arguing here, exactly what the judge on two occasions in the district court in Nevada has found exactly what should be looked at and what should be appropriate. On two occasions now, this plan has been told by Justice, excuse me, Judge Pro in the district court. The first time they actually made a decision of no benefit without even having a document they could look at or refer to. You've just been denied. I mean, I had a law school professor who told me that is result-oriented decision making. And that's exactly what we have here, a creative reading of the big letter P participant, big letter E employee, to try and deny Mr. Weaver a benefit. He actually worked 13 years and eight months. He actually is entitled to a pension benefit under the exact section for normal retirement that counsel is referring to. He should have his benefit multiplied times the years of actual service to get his benefit. There are records. The one interesting thing is that, to go back to the nitty-gritty of this very arcane language, on page 267, section 10, credited service, there is a difference between A and B, in that A uses the term participant and B uses the term employee. Do you have any explanation for that? Not having written the plan, obviously, I know, but let me just look. Do you have any explanation of how one could give some force to that distinction, which seems to have been conscious? If you look at section A, it talks about former plans. But if you look at section B, it has this additional 1,200 hours or more per year requirement. So it appears that they're talking about different ways that you can calculate credited service. But if B really does not seem to have an application to this particular case, we're talking about A. All of Mr. Weaver's time was accrued based on his hours of work under prior plans. It is the plan that you look at now for the calculation, which is the 81 plan, that should determine what it is he is going to get. The second, paragraph B, just seems to have absolutely no application to that. And more importantly, nothing in paragraph B is a requirement that they actually work. If you were to take that to a basic or expanded argument, any time an employer had a person on leave of absence and they looked at his pension benefits and they decided, hey, he's getting pretty close, all they would have to do is say, you're not coming back to work, and somehow he could be defined or denied a benefit. Also, could I ask you a question? When did Mr. Weaver's benefits vest? I believe they vested at the time that he terminated, in October of 1986. That's the plan. Possibly at the time that the collective bargaining agreement was modified so that he couldn't have come back. Correct. That would still be the same plan. The same plan that only requires 10 years of participation to get a benefit. And that's really why I think both the district court and Mr. Weaver believe he is entitled to a benefit. Realistically, any time someone went on an FMLA, a company approved, which was what this was, leave of absence, or went to serve his country, and if he came back and didn't get rehired for one day, under the appellant's argument, he could be denied a benefit. That's not my understanding, because his theory would be as long as he worked after May 1, 1978, he's in. But this was a company approved leave of absence. I understand that, but I'm simply disputing your right of horribles. It doesn't seem to me it goes to what you're saying. All right. I recognize that. I wonder if I think, unless you have some other questions, I did want to address the issue of our appeal, which is on the denial of attorney's fees and costs and interest. Okay. The decision by Judge Pro in denying the request for attorney's fees and costs and interest is a one-page order that doesn't really have any explanation of why. But I think that this particular case is a case which clearly does call out for an award of both of those items. He's waited 10 years since he applied for this benefit, and the provisions of 29 U.S.C. 1132 G.1 set forth, as stated in Elliott v. Fortas, 337 F. 3rd, 1138. That's a 1963 decision of this Court. The five factors for determination of attorney's fees. One, culpability or bad faith. I think if you look at the decision by Judge Pro on finding arbitrary and capricious action by the plan, that does satisfy that. Ability to pay. Your Honors, I've asked the question today. It appears there is an ability to pay. There's a trust that could pay that amount. Would it deter others? Clearly, if an incision was made that you would have an obligation to pay attorney's fees if you made an arbitrary or capricious decision on a benefit plan, that would result in a deterrent of having this happen in future cases. And would it benefit others? Clearly it would. If others were undeniably deprived of their benefits, they clearly should be entitled to attorney's fees. And finally, the relative merits of the case. This plan has now been told twice by the District Court that their actions were arbitrary and capricious. The only part of the case that Mr. Weaver did not prevail on was his request for documents. He had been requesting documents all the way back to 1999, and he only got those after we started this litigation in the District Court in 2004. So to say that he's not entitled to any attorney's fees at all, I think is an abuse of discretion by the judge at the lower court. On the second- Suggesting, counsel, that we remand to the District Court and ask for an explanation of the fees or the denial of fees? No, actually, I believe that fees are appropriate and it should be remanded to the District Court for determination of what a reasonable attorney's fee should be. That's what 1132G1 provides for and what the District Court would have the providence and ability to make a decision on. And secondly, on the issue of interest, I understand that there isn't a specific provision in ERISA that provides for interest, but we are talking about 10 years of waiting for this benefit. And equity under ERISA or equitable relief is also recognized, and that would include making Mr. Weaver whole for how long he's had to wait for this benefit, and that would include an award of interest until such time as he actually receives that award. Thank you. Thank you. What is the difference between credited service and eligibility service under this plan? Credited service is the key factor in computing one's accrued benefit. Eligibility service is what we understand today in common parlance as vesting. An accrued benefit, the accrued benefit formula here, multiplier times credited service, gives you simply a dollar amount. If you want to know whether you have a right to that benefit amount, you look to the amount of vesting that you have, the amount of eligibility service. This plan had a permissible 10-year cliff vesting schedule, which meant that you did not have any right to your accrued benefit until you worked 10 years for 1,000 hours a year without a break in those 10 years. To me, as if credited service is service that's not for work under this plan, and eligibility service is service that is work under this plan, and that the May 1, 1978 reference is, in other words, for work between May 1, 1978 and 1981. And then anything that's worked after 1981 becomes eligibility service. That's what makes sense out of all this to me. Well, it's the – No? Your Honor may have picked on something I hadn't noticed. I'd have to look at that. But what is clear is that credited service in A and B are the years that get multiplied times the multiplier. In A, you can count prior time once you're a participant as credited service. Remember before it was called accredited service with a small a, small s. In B, by working, an employee can accrue credited service, and once you've got a number bigger than zero, here it has to be a twelfth of a year or 100 hours, you've now got something to plug into your formula other than zero, and you then have an accrued benefit. But you have no right to it until you vest, and that requires 10 years of eligibility service. Now, that's not the way it is today, but it's the way it was in 1981. I hope you've clarified this since then. I'm sorry? I hope you've clarified this since then. This plan obviously is very different. There's another version in here. What I think is important is that we have to bracket our modern sense of fairness that ERISA permits us to have in these matters and take for granted. ERISA was passed to correct a lot of problems, but it was not made retroactive to go back and correct those problems, and that was by virtue of a congressional compromise. Because Congress required that these plans be funded and that the trusts, yes, there was a trust in 64, but there was a requirement these trusts have monies that could not be touched by the employer, as Studebaker had done, that helped actually. Would you wrap up in 30 seconds or 15 seconds? 15 seconds, certainly. The judge went off the reservation here. It did not follow the precise terms of the plan. Pay attention to capital P, participant, capital E, employee, and I think you'll do fine. Let me pose one question. I've struggled with this trying to figure out what participant means. And at the top of page 270, I see it now, section J, an employee shall commence participation in this plan on the first day he becomes an employee. That's right. But the next sentence uses the word participant, which seems to follow from the word participation. Not at all, because participant is defined in section 1, paragraph 10 of this plan. But not in a very useful way, not in a way that tells us what it means. I've read that definition. That doesn't help. Well, it says here that an employee is someone, once they're allowed to participate, that means they are in the class of people who may someday become a participant through work. Okay. I appreciate your efforts. Thank you very much. Thank you, counsel, for trying to illuminate this. The case of Weaver v. Retirement Plan is submitted.
judges: Nelson D. W., Berzon, Clifton